

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00483-CV

C.H. CANADA                                          APPELLANT

V.

W.R. CANADA, JR.                                      APPELLEE

AND

W.R. CANADA, JR.                                      APPELLANT

V.

C.H. CANADA AND MARK LIEBERMAN             APPELLEES

----------

### FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---
[1]*See* Tex. R. App. P. 47.4.

## I. INTRODUCTION

In 2011, Appellant C.H. Canada (Carol) filed a bill of review challenging an agreed divorce decree that was signed on May 18, 2000. The trial court granted a combined traditional and no-evidence motion for summary judgment filed by W.R. Canada, Jr. (Ralph). Carol perfected an appeal, raising eleven issues challenging the summary judgment. We will affirm.

The trial court also found that Carol's claims had been brought in bad faith and in violation of Texas Rule of Civil Procedure 13 and signed an order sanctioning Carol but declined to impose sanctions on Carol's attorney, Mark Lieberman. Ralph perfected an appeal, raising one issue challenging the trial court's refusal to sanction Lieberman. We will affirm.

## II. FACTUAL BACKGROUND

Carol and Ralph married on December 31, 1993. Ralph asked Carol for a divorce in November 1999, and Carol and Ralph executed an agreed decree of divorce on May 18, 2000. The decree awarded Ralph

> [a]ll sums of money and other assets held for the benefit of W.R. CANADA, JR., whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, salaries or commissions, disability plans, retirement plans, deferred compensation plans or other benefits existing by reason of W.R. CANADA, JR.'s past, present, or future employment.

According to Carol, ten and a half years later, in December 2010, she ran an internet search and discovered litigation between Ralph and his former

2

employer, The Heritage Organization, revealing that Ralph allegedly "had earned substantial income and had acquired substantial assets deferred income [sic] that he had never disclosed to her during their marriage or prior to the entry of the divorce decree." Carol concluded that Ralph allegedly had misstated their marital assets during the divorce by not revealing deferred compensation that he was entitled to receive. Carol claims that if she had known about this information, she would not have entered into the consent divorce agreement.

Carol sued Ralph in 2011, pleading various causes of action; she contended that the statute of limitations applicable to her pleaded claims did not accrue until December 2010 when she discovered them and that Ralph had fraudulently concealed the compensation owed him from Heritage, tolling the statute of limitations.

Ralph filed a general denial and alleged numerous affirmative defenses, including limitations. He also moved for sanctions jointly and severally against Carol and Lieberman. Eventually, Ralph filed a combined traditional and no-evidence motion for summary judgment, asserting the affirmative defense of limitations as one of his grounds for summary judgment.

The trial court granted Ralph's traditional and no-evidence motion for summary judgment. The trial court later granted Ralph's motion for sanctions against Carol and simultaneously denied Ralph's motion for sanctions against Lieberman. These appeals followed.

### III. SUMMARY JUDGMENT WAS PROPER ON RALPH'S STATUTE OF LIMITATIONS DEFENSE

In her second issue, Carol argues that Ralph failed to meet his summary judgment burden to conclusively establish every element of the affirmative defense of limitations as to each of her claims. Carol argues that she pleaded the discovery rule and fraudulent concealment and that Ralph did not negate these theories.

### A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). On appeal, we will affirm the summary judgment if any ground raised by the prevailing party in its summary judgment motion has merit. *Bradley v. State ex. rel. White,* 990 S.W.2d 245, 247 (Tex. 1999).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert.*

*denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008). To conclusively establish the affirmative defense of limitations, a defendant must (1) conclusively prove that the cause of action accrued before the commencement of the statute of limitations period, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of her injury. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the defendant establishes that the statute of limitations bars the action, the plaintiff must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *See id.*

### B. The Discovery Rule and Fraudulent Concealment

Two doctrines may apply to extend the statute of limitations: the discovery rule, which delays accrual of the cause of action, and fraudulent concealment, which tolls the statute of limitations after a cause of action has accrued. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011); *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65–67 (Tex. 2011).

The discovery rule is applied categorically to instances in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is

5

objectively verifiable." *Marshall*, 342 S.W.3d at 65 (citing *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455–56 (Tex. 1996)). An injury is not inherently undiscoverable when it is the type of injury that could be discovered through the exercise of reasonable diligence—especially diligence in searching public records. *See id.* at 66 (explaining that injury was not inherently undiscoverable when information concerning a lessee's failure to continue good-faith effort to develop an oil and gas lease was obtainable from public records); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001) (explaining that injury was not inherently undiscoverable when information concerning royalty owner's claims for underpayment was obtainable from lessee, general partner, and gas purchasers). Recognizing the social benefit in granting repose after a reasonable time, the Texas Supreme Court has described the discovery rule as a "'very limited exception to statutes of limitations.'" *Wagner & Brown*, 58 S.W.3d at 734 (quoting *Altai*, 918 S.W.2d at 455–56).

Fraudulent concealment is an equitable doctrine that may operate to toll the statute of limitations after a cause of action accrues. *Marshall*, 342 S.W.3d at 65. Fraudulent concealment tolls limitations "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *Shell Oil Co.*, 356 S.W.3d at 927 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)). But fraudulent concealment will toll the running of limitations only until the fraud is discovered or could have been discovered with reasonable diligence. *Marshall*, 342 S.W.3d at 67.

6

## C. Ralph Conclusively Established the Affirmative Defense of Limitations and Conclusively Negated the Discovery Rule and Fraudulent Concealment

Here, Ralph set forth the applicable statutes of limitations (which is four years) for each of the three claims that Carol asserted in her second amended petition—bill of review, fraudulent inducement to enter into a consent divorce property division by intentional omissions, and breach of fiduciary duty. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4)–(5) (West 2002); *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (stating that the residual four-year statute of limitations applies to bills of review and citing Texas Civil Practice and Remedies Code section 16.051); *see also Dodson Int'l v. Atl. Aviation Corp.*, No. 01-07-00654-CV, 2008 WL 962829, at *4 (Tex. App.—Houston [1st Dist.] Apr. 10, 2008, no pet.) (mem. op.) (stating that statute of limitations for fraudulent inducement claim is four years). Ralph attached to his motion for summary judgment excerpts from Carol's deposition in which she testified that she knew of Ralph's claims against Heritage in 2002:

> Q.     When did you first know about that arbitration claim?
>
> A.     Gosh, I heard about when -- well, it must have been 2002, maybe like March, and I'm just guessing on that. I know Ralph was -- he called me and said he might be a little late on payments to me --
>
> . . . .
>
> Q.     Did you ever make any effort to go find a copy of the arbitration claim?
>
> A.     No.

7

. . . .

Q. All of the things that he [Ralph] claimed in his arbitration claim were related to his employment with Heritage. Is that correct, Ms. Canada?

A. Yes, according to what I've recently seen has to do with the oral -- or the employment contract.

. . . .

Q. So, as of August of '02, you were aware that --

A. Uh-huh.

Q. -- Mr. Canada and Mr. Kornman were in a dispute with each other?

. . . .

Q. So, in August of '02, what did you do to determine whether or not you had any interest as a result of your marriage to Mr. Canada in his 8 million dollar claim?

A. Apparently nothing because he said -- I mean, there was nothing due to me from that.

. . . .

Q. But in '03, you would have looked at it [the divorce decree] --

A. Uh-huh.

Q. -- to make sure you knew what it said, correct?

A. Uh-huh. Uh-huh.

Q. That's a "yes"?

A. Yes.

Q. And in '03, you knew that he had a claim against Mr. Kornman, correct?

A. Apparently so, yes.

Q. Okay. But you didn't take any steps in '03 to investigate that claim or to pursue any issue about his failure to pay for Zeus's [the dog's] care, correct?

A. Right. I -- again, he didn't have -- there was no interest for me in that arbitration claim.

. . . .

Q. Did you ask him [Ralph] for a disclosure of the valuation of the deferred income assets allegedly he had?

A. I didn't know deferred income existed.

Q. Okay. So, that means, no, you didn't ask him?

A. Right.

. . . .

Q. Okay. Did you ask him to give you an accounting of any potential tax recovery that y'all might have had at the time of the divorce?

A. No.

. . . .

Q. (By Ms. Yates) So, your complaint is that Mr. Canada somehow misrepresented the actual facts regarding your assets that the judge was to determine in your divorce?

A. Yes.

Q. And your property was the issue in controversy in that divorce proceeding?

A. Yes.

Q.      And, so, the property issues that you're complaining that he misrepresented were the issues that underlie that divorce decree and judgment?

A.      Yes.

Q.      Okay.  So, the complaint you have with Mr. Canada's conduct goes to the merits of the issues in that divorce?

A.      Yes.

. . . .

Q.      Okay.  The issues that you currently have with Mr. Canada could have been tried in that divorce proceeding.

A.      Had I known about them, yes.

. . . .

Q.      You could have asked any of the 12 attorneys that you've had represent you since the divorce --

A.      I didn't have any reason --

Q.      -- to investigate any of that.  I didn't ask if you had any reasons.  I asked if you could.

A.      I could have.  I could have done a lot.

. . . .

Q.      Okay.  So, in October of '05, you and Mr. Canada didn't have any disputes between you --

A.      No.

Q.      -- correct?

A.      That's correct.

. . . .

10

Q. When did you file bankruptcy?

A. May of 2007.

Q. Okay. And in May of 2007, did you list as one of your assets any claims against Mr. Canada as a result of your divorce from him?

A. No.

. . . .

Q. You had no claim against Mr. Canada?

A. Of course.

Q. Okay. And he hasn't done anything to you since '07?

A. Done anything to me?

Q. Yeah. He hadn't breached any agreements. He hadn't lied to you. He hadn't done anything to you since 2007, has he?

A. Not that I'm aware of.

Carol's affidavit attached to her response to Ralph's motion for summary judgment states:

> The fact however is that I was well aware that Ralph had a[n] arbitration pending in 2002 and that he was seeking millions of dollars from his former employer. What is missing from Ralph's side of the story is that I had asked him if the amounts claimed were from our marriage[,] and he had told me that they were not. They were post marital and included a slander claim as well. He also never mentioned that the amounts he sought included a total claim of over $13,000,000[,] including a claim for past[-]due deferred income that began during our marriage.

11

Neither Carol's affidavit nor the remainder of the summary judgment evidence indicates that Carol took any steps prior to her 2010 internet search to investigate whether Ralph's litigation against Heritage might affect her.

The summary judgment evidence viewed in the light most favorable to Carol conclusively establishes that Carol's claims against Ralph stem from his alleged failure to disclose information to her in their divorce proceeding; their divorce judgment became final in 2000. Thus, Ralph conclusively established that all of the claims asserted by Carol in her 2011-filed lawsuit were filed outside the applicable four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4)–(5); *Caldwell*, 975 S.W.2d at 538; *Dodson Int'l*, 2008 WL 962829, at *4.

We next examine whether Ralph conclusively negated application of the discovery rule and fraudulent concealment doctrine by proving as a matter of law that there is no genuine issue of material fact about when Carol discovered or with the exercise of reasonable diligence should have discovered the nature of her injury. *Shell Oil Co.*, 356 S.W.3d at 927–28 (explaining that "[t]he Rosses did not exercise reasonable diligence and their claims are barred by limitations if readily accessible publicly available information could have revealed Shell's wrongdoing before the limitations expired"); *see also Marshall*, 342 S.W.3d at 65–67. Viewing all the summary judgment evidence in the light most favorable to Carol, we hold that Ralph conclusively established through Carol's own testimony that Carol had knowledge in August 2002 of Ralph's compensation claims

12

against Heritage.[2]  The summary judgment evidence establishes that Carol made no investigation or inquiry into the nature of Ralph's claims against Heritage until 2010, when she conducted an internet search.  Because Carol knew in August 2002 that Ralph had claims against Heritage, even if the discovery rule or the doctrine of fraudulent concealment applied here, Carol was required to file suit no later than four years after August 2002, when she learned of the existence of Ralph's claims and in the exercise of reasonable diligence could have discovered the exact nature of those claims.  *See Shell Oil Co.*, 356 S.W.3d at 927–28.  She did not do so.  The summary judgment evidence establishes as a matter of law that although Carol knew of Ralph's claims against Heritage in 2002, she did not investigate the claims until 2010 and did not file suit until 2011.  No genuine issue of material fact exists about when Carol discovered or should have with the exercise of reasonable diligence learned of her alleged injury.  Ralph conclusively established his entitlement to summary judgment on his affirmative defense of limitations; we overrule Carol's second issue.[3]  *See Shell Oil Co.*, 356

---

[2]Any fiduciary duty owed by Ralph to Carol terminated in 2000 when Ralph and Carol divorced.  *See In re Marriage of Notash*, 118 S.W.3d 868, 872 (Tex. App.—Texarkana 2003, no pet.) (noting that any fiduciary duty between spouses terminates upon divorce).  Thus, absent evidence of some other type of fiduciary relationship, Carol cannot rely upon any post-divorce fiduciary duty on Ralph's part to disclose information to her.

[3]Because we must affirm the trial court's summary judgment if any ground advanced in the summary judgment motion is meritorious and because we have determined that Ralph's ground for summary judgment asserting the affirmative defense of limitations is meritorious, we need not address Carol's issues three through ten challenging the other summary judgment grounds asserted by Ralph.

13

S.W.3d at 927–28; *Marshall*, 342 S.W.3d at 67; *Kerlin v. Sauceda*, 263 S.W.3d 920, 926 (Tex. 2008).

### IV. SUMMARY JUDGMENT DISPOSED OF ALL CAUSES OF ACTION

In her first issue, Carol argues that the summary judgment order did not dispose of all her causes of action. Procedurally, after Ralph filed his motion for summary judgment, Carol filed her first amended petition. Ralph then filed a supplemental motion for summary judgment, pleading that "[n]othing in the amended petition is new or avoids any of Ralph's affirmative defenses." Ralph's supplemental motion for summary judgment also responded to Carol's newly-raised claim for "fraudulent inducement to enter into a consent divorce property division by intentional omission." Carol then filed a second amended petition. Carol's second amended petition pleaded the same three theories as her first two petitions: bill of review, fraudulent inducement to enter into a consent divorce property division by intentional omissions, and breach of fiduciary duty. In all three of her petitions, Carol mentioned, but did not plead as separate causes of action, duress and common law fraud.

Carol argues that because she amended her petition after Ralph filed his motion for summary judgment and his supplemental motion for summary

---

*See, e.g., Bradley,* 990 S.W.2d at 247. We need not address Carol's eleventh issue, challenging Ralph's summary judgment affidavit, because even if we do not consider Ralph's affidavit, Ralph conclusively established his affirmative defense of limitations. *See* Tex. R. App. P. 47.1 (stating that appellate court must address every issue necessary for final disposition of appeal).

judgment, the claims she added for fraudulent inducement, fraudulent concealment, duress, and common law fraud were not addressed by a summary judgment motion. Of these four "causes of action" that Carol claims were unaddressed by Ralph's summary judgment motion, only the fraudulent inducement claim was actually pleaded by Carol. And Ralph's supplemental motion for summary judgment does address Carol's fraudulent inducement claim. Ralph's initial motion for summary judgment addressed Carol's duress and common law fraud contentions mentioned in all three of Carol's petitions, although they were not pleaded as separate causes of action. And Ralph's initial motion for summary judgment also addressed Carol's fraudulent concealment contention, although Carol's second amended petition arguably deleted this contention. Therefore, the trial court had before it motions for summary judgment addressing every cause of action pleaded by Carol—Ralph's original motion for summary judgment and his supplemental motion for summary judgment.[4] *See generally* Tex. R. Civ. P. 166a(b), (c).

Additionally, although summary judgment generally may not be granted on a claim not addressed in the summary judgment proceeding, summary judgment may be granted on later pleaded causes of action if the grounds asserted in the motion show that the plaintiff could not recover from the defendant on the later

---

[4]Carol made no complaint in the trial court and does not complain on appeal concerning the filing of Ralph's supplemental motion for summary judgment.

pleaded causes either because the movant has conclusively disproven ultimate facts central to all causes of action or the claims subsequently added are derivative of the claims addressed. *See e.g., Ritter v. Las Colonitas Condo. Assoc.*, 319 S.W.3d 884, 891 (Tex. App.—Dallas 2010, no pet.); *McIntyre v. Wilson*, 50 S.W.3d 674, 684-85 (Tex. App.—Dallas 2001, pet. denied); *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 437 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *accord Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (reversing court of appeals for holding quiet title claim was not barred by limitations because "having asserted limitations against Ford's fraud claim, ExxonMobil did not have to assert limitation against each item of legal or equitable relief that stemmed from it"). The summary judgment evidence, viewed in the light most favorable to Carol, conclusively establishes Ralph's entitlement to judgment as a matter of law based on the affirmative defense of limitations concerning any legal or equitable relief asserted by Carol that is based on Ralph's alleged conduct or misrepresentations pre-2000 because Carol testified that she had learned of the existence of Ralph's purportedly undisclosed financial claims in 2002 but had failed to investigate those claims until 2010 or file suit until 2011.

We overrule Carol's first issue.

## V. TRIAL COURT DID NOT ABUSE ITS DISCRETION BY NOT AWARDING SANCTIONS AGAINST LIEBERMAN

Separately from the summary judgment, the trial court signed an "Order On Motion For Sanctions."  The order sets forth the trial court's detailed findings with regard to Carol and her attorney Mark Lieberman:

> After considering the evidence and argument of counsel, IT IS ORDERED, ADJUDGED, and DECREED that W. Ralph Canada's Motion for Sanctions and Supplemental Motion for Sanctions against Mark Lieberman is DENIED.  The Court specifically finds that Mark Lieberman was entitled to rely upon the representations of his client in preparing the petitions filed in this case.
>
> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that W. Ralph Canada's Motion for Sanctions and Supplemental Motion for Sanctions against CAROL CANADA is GRANTED.  Good cause exists for the imposition of sanctions under Texas Rule of Civil Procedure 13 for pleadings that were **groundless** and brought in **bad faith** or groundless and brought for the purpose of **harassment**.
>
> The original petition, first amended petition[,] and second amended petition filed on behalf of Carol Canada are **groundless** because they had no basis in law or fact and were not warranted by a good faith argument for the extension, modification[,] or reversal of existing law.  Particularly, the pleadings continuously assert a claim for deferred compensation that never existed.  The Court finds that the evidence establishes that Carol Canada knew prior to the divorce of the parties that the deferred compensation agreement was in place.  She also knew that no deferred compensation was ever received by W. Ralph Canada, Jr.  Finally, she knew the deferred compensation, if any, was awarded to W. Ralph Canada, Jr. in the divorce decree.  Continuing to pursue some claim against an asset that never existed, was disclosed, and was previously divided constitutes bad faith.
>
> In addition, this action is based upon Carol Canada's misrepresentation about the underlying divorce.  The undisputed evidence is that she was represented by independent counsel.  She appeared and participated in the divorce hearing.  To claim otherwise is bad faith.

17

The Court further finds that sanctions are necessary against Carol Canada to deter any further conduct in violation of Texas Rule of Civil Procedure 13.

The Court further finds that Carol Canada's actions in this case were motivated by bad faith and to harass W. Ralph Canada, Jr.

***Sanction.***

IT IS ORDERED[,] ADJUDGED[,] AND DECREED that Carol H. Canada pay W. Ralph Canada, Jr. the sum of $5,000. If said sum is not paid within 30 days of today's date, then W. Ralph Canada shall have a judgment for the unpaid sum against Carol H. Canada. The Judgment shall accrue interest at the legal post-judgment rate and be subject to execution.

In his sole issue, Ralph argues that the trial court abused its discretion by refusing to order sanctions against Lieberman. Specifically, Ralph argues that the trial court did not properly apply the law as established in Texas Rule of Civil Procedure 13 because the trial court excused Lieberman from making a reasonable inquiry into the law and the facts before signing the pleadings in this case.

We review a trial court's award or denial of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We may find a trial court to have abused its discretion only when the court has acted arbitrarily and unreasonably, without reference to guiding rules or principles, or has misapplied the law to the established facts of the case. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

18

Courts presume that pleadings, motions, and other papers are filed in good faith, and the party moving for sanctions has the burden of overcoming this presumption. *GTE Commc'n Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993). Under rule 13, "bad faith" requires the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Stites v. Gillum*, 872 S.W.2d 786, 794–96 (Tex. App.—Fort Worth 1994, writ denied). A party acts in bad faith when discovery puts him on notice that his understanding of the facts may be incorrect and he does not make a reasonable inquiry into the facts before filing a pleading. *Monroe v. Grider*, 884 S.W.2d 811, 819 (Tex. App.—Dallas 1994, writ denied). Ultimately, the trial court is required to examine the signer's credibility, taking into consideration all the facts and circumstances available to him at the time of the filing. *Home Owners Funding Corp. of Am. v. Scheppler*, 815 S.W.2d 884, 889 (Tex. App.—Corpus Christi 1991, no writ).

The sanctions order signed by the trial court indicates that an evidentiary hearing was conducted on November 30, 2011 on Ralph's motion for sanctions. The trial court was in the best position to examine Lieberman's credibility, taking into consideration all of the facts and circumstances available to Lieberman at the time of the filing, and the trial court determined that Lieberman was entitled to rely on Carol's statements in preparing the petitions. *See id.* Based on the record before us,[5] we cannot conclude that the trial court's decision to impose

---

[5]We notified the parties on February 13, 2012, that because appellant failed to pay or make arrangements to pay for the reporter's record, we would

sanctions only on Carol was arbitrary, unreasonable, or without reference to guiding rules or principles. *See Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 762 (Tex. App.—El Paso 1993, no writ). We therefore decline to hold that the trial court abused its discretion by denying Ralph's request for sanctions against Lieberman. *See Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244, 256 (Tex. App.—Austin 2007, no pet.) (holding that trial court's refusal to award attorney's fees under rule 13 was not an abuse of discretion); *In re C.Z.B.*, 151 S.W.3d 627, 637 (Tex. App.—San Antonio 2004, no pet.) (holding that trial court did not abuse its discretion by failing to impose sanctions for a groundless pleading filed in divorce case); *Scheppler*, 815 S.W.2d at 890 (holding that trial court did not abuse its discretion by not awarding sanctions). We overrule Ralph's sole issue.

---

consider and decide those issues or points that do not require a reporter's record for a decision. *See* Tex. R. App. P. 37.3(c). No reporter's record from the sanctions hearing has been filed with us; typically, in the absence of a complete or agreed statement of facts, we will presume that there is sufficient evidence to support the trial court's findings. *See, e.g., Schafer v. Conner,* 813 S.W.2d 154, 155 (Tex. 1991).

## VI. Conclusion

Having overruled Carol's first and second issues, which are dispositive of her appeal, we affirm the trial court's summary judgment in favor of Ralph. Having overruled Ralph's sole issue, we affirm the trial court's "Order On Motion For Sanctions."

SUE WALKER
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DELIVERED:  April 25, 2013